May it please the Court, my name is Donald Brady on behalf of the Appellant Lucia Salvati with my partner Frank Federico. We seek reversal of a decision of the lower court dismissing the complaint by Ms. Salvati seeking to obtain a declaratory judgment as well as a defense of this particular case that was pending in state court here in Massachusetts. The underlying case of course involves the wrongful death of Gerardo Salvati that occurred in June of 2010. Mr. Salvati was killed in the course and scope of his job. An action was brought on his behalf by Ms. Salvati seeking damages in that particular case. The case was litigated in full. Mr. Easton and the other technical ownership defendants were defended throughout the case. They came up for a mediation. I bring this up only because of participation not to infringe upon the mediation procedure. But both the defendants as well as their primary insurer which was Western World as well as the excess insurer which is the defendant in this case participated to some extent. At some point the primary insurer offered its underlying policy of insurance. The excess policy then refused to cover, refused to identify and in fact refused to defend Mr. Easton in this particular case in his role as an owner. You know this is a rather confusing case and so I'd like to go back. Initially the excess carrier sent letters, there were a couple of letters apparently in which they said they were going to participate and they didn't have any coverage. They claimed there was an exclusion in the policy that he was an employee and that as an employee he was not, the excess policy didn't cover for the injuries to him. It's interesting because we're dealing with the question of primary and excess as well. When we get down the road my problem here right now is I'm not even in court to address that particular issue. The issue that we're addressing is whether Mr. Easton had the right to assign his rights against his excess. The reason for my question is you were on notice that there was a coverage issue that they were going to raise in any event at some point down the road. You had the reservation of rights, you understood at least there was a problem. Now this case never resulted in a judgment, correct? It resulted in a settlement. A settlement but not a judgment. Your Honor, and herein lies the rub. Because the question becomes is whether a settlement agreement becomes a legally enforceable obligation upon the defendant to pay. Can I just say one question because I think it will help me? Yes, Judge. I thought the legal question was whether there's a legal obligation to pay damages. Right, yes. And you just stated it slightly differently. You said whether there's a legal obligation to pay. No question a settlement can create a legal obligation to pay. But under the contract the question is does a settlement that's not a judgment constitute a legal, to me at least, a legal obligation to pay damages? If we buy that particular argument, then we can never ever in the civil system ever settle a case that doesn't have a judgment attached to it. That's the problem. And the question is what does it mean by damages? I'm sorry, Judge. You know what the language was of the exodus policy, a legal obligation to pay damages. That is damages that the insurer will be obligated to pay. Right. And you'll notice that that's the key language. Right. And with all due respect, somebody wrote a settlement agreement that seems to be unaware of. I don't believe that to be the case. The question of what is damages, okay, and when damage is attached, the word damages don't really arise from a judgment. They arise from allegations in the complaint. They arise at the beginning of the case. What? Damages arise from allegations in the complaint? They certainly do. The question of what these are, it doesn't require an actual judgment. Isn't it obligated to pay damages because of the allegations in the complaint? And as well as the term damages in and of itself doesn't require an actual judgment. If that were true, we could never settle a case. Well, I'm not saying it would make an insurer legally obligated to pay, especially an insurer that chose this particular path to disclaim both defending and indemnifying the defendant, leaving the defendant absolutely alone. I'm sorry, Judge. But you were in the position, you had a valid attachment on the defendant's property. Yes, Your Honor. And so at the point when you were trying to, and I understand the dilemma that you're raising, and I have a lot of questions for your, for brother counsel on that question. Could you have gotten, what you did was when you settled the case, you released, you issued a release, a full release. Yes, Your Honor. Without any finding as to what the damages actually were, other than the ones that you agreed to with the underlying, with the primary carrier. And so, Understanding that that was the available amount of the coverage that would be at issue. Correct. And also understanding that this was approved by a superior court judge as to what it was, and she had found that the damages had exceeded that amount. We agreed that we would only take the amount available under the insurance policy. The actual attachment in this case far exceeded the actual amount of the, the amount in the release. She found what? In the previous settlement, the judge found what? When the judge initially issued her order of attachment, the attachment far exceeded the amount of the release. Yes, but the reason for her approval is because of the workers' comp aspect of this case. You had workers' comp lien, I assume. We did. And that's why she became involved in approving that settlement. But that's, how does that settlement bind the excess carrier? First of all, the settlement we would agree would bind the defendants in this particular case. Is that, I think that's a fair statement. They would then have rights against their carrier for disclaiming their rights. And I point to the fact that although Massachusetts has never, and the state court of Massachusetts has never fully addressed this particular issue, if I look at the Campion versus Wilson case, you'll see. There was a judgment in Campion. An agreement not to enforce. Yeah, but there was a judgment. But it only buried inside the settlement agreement and really doesn't. Buried inside the settlement. There's a settlement agreement. But the court, let's hear the thing. In Campion, the court raises the concern about collusion. Fair enough. And it's obvious why you would raise that concern, because you're selling other people's money, arguably, right? Okay, so then they're trying to balance that concern against the concern you raised, which is, but I have this excess insurance policy and I'm entitled to settle. I don't have to pursue litigation fully.  Campion dealt with the issue in the case in which there was a judgment. And then it says, do we enforce the comment not to execute on the judgment? Does that kill the deal? It didn't address the issue of if there's no judgment at all, is it payable as damages? If I might, Your Honor, I believe, and again, I don't mean to overstep my, but the settlement in Campion, it wasn't a judgment. There was an agreement for judgment that was, that accompanied a, a, a. But here's why it's not to enforce. Can I just, can I hear the other part of your argument? But I want to just say why the judgment might matter. If I understand it, the consequence of settling it as a judgment is that I then am accepting the full weight of the payment. And then you say, okay, but there was a comment not to execute, so I've insulated myself in that. But I take the risk that comment won't be enforceable. If that comment is not enforceable, I'm still on the hook for the whole judgment, aren't I? Yes, Your Honor. So that's pretty different than here where there's no risk at all by the one settling because they've never entered into any judgment that puts them on the line. So the risk of collusion that Campion raises is mitigated in a case in which there's an actual judgment, even in the course of a settlement. And even when there's a comment not to execute, that's just not true here. Your Honor, I would, I would, I would submit to you that having the ability to enforce the settlement agreement as if it were a judgment is, is, is practically the exact same. And the other thing I would. No, no, no, that's not true. But I want to get this straight. There's no way this settlement can result in any liability beyond $1 million for the non-excess insurer, correct? For the Western World Insurer, no. What I didn't mean is they had entered judgment of $6 million and then imposed a comment not to execute on it. If that comment not to execute was deemed non-enforceable, then Western World Insurer could be liable for $6 million. True? I suppose, except that in Campion, it actually was a settlement agreement with an agreement for judgment and a covenant not to sue all baked into the same settlement agreement. So you mean that would have blown up the settlement? I don't think, first of all, I don't think that it would have been an issue of, of, of blowing up the agreement not to sue in Campion, but I can't really speak to that. My concern, though, is about the issue of collusion, because I think that is an important point. This was done as an arms, there's no doubt that if there is an issue of collusion, it's certainly a fact-based issue as to what happened during the course of the settlement negotiations. That is not what the District Court even looked at in this particular case. There was no evaluation of that. I would submit that the fact that there was a Chapter 152 petition under the comp supports the fact that it, in fact, was an arms-length transaction, was done under the jurisdiction of the court, was ultimately approved by the court, and mitigated against the facts of collusion, at least at this particular stage. But Ms. Salvati has no ability, standing in the shoes of Mr. Easton, to collect at this particular point because of what I perceive to be a misunderstanding of what a settlement agreement can do. It's a legally enforceable document, and I believe that we're allowed to use that in order to enforce settlements in the case. If we can't, we'll never be able to settle a case in the civil system again without taking a judgment. And I think that's not what the plain force of law has been with regard to settlement agreements. So I apologize for overstepping my time, Your Honor. It is our request that the court reverse the decision of the District Court, remand it back for further proceedings regarding issues of collusion, regarding issues of coverage, and allow this to go forward. And I thank you for your time. May it please the Court. Good morning, Your Honors. My name is Gregory Varda. I represent the American Insurance Company in this matter. I'd like to start by asking you a hypothetical. Yes, Your Honor. Because I want to know how you trigger excess insurance. Let's assume this is a simple case. Individual defendant, individual plaintiff. There's an underlying coverage of a million dollars claimed clearly in excess of a million dollars. The insurer who has the primary coverage doesn't want to waste a lot of time and money and says, I'm willing to throw in my policy. And we're not even in court yet. What triggers the excess carrier's obligation at that point? Because as I look at what we have here, I can't figure out what would trigger your company's obligation to actually step up to the plate and either pay or defend in the subsequent lawsuit. If there has been a settlement with the primary carrier, it's throwing in their policy limit. Your Honor, you've touched on the question of whether a claim in the absence of litigation gives rise to a duty to indemnify. That's my first threshold question. It grows as you go along the line. But I'm starting out with that threshold, which is not unusual. That a primary carrier will look at a case and say, the liability is as good as it's ever going to be, and this is a bad case, I'm going to throw in my policy limit. How do you trigger the excess carrier? From a contractual standpoint, Your Honor, the policy addresses that very question. In contrast to requiring the insurer, the excess insurer, to pay on behalf of an insured damages, the provision that addresses claims, which is different from suits, does not impose an obligation to pay. It says it's discretionary. So it's a discretionary question when a claim is involved. There's a distinction when litigation is present, and there is a judgment or there is a settlement with an agreement for judgment. What's that provision? Excuse me, Your Honor, I'll find that for you. It is section 2.3, appendix A-282 is the page. And it talks about the insurer, the excess insurer, having discretion to settle a claim, which is what we'd be talking about in that instance. But now, in my same scenario, the primary carrier wants a release. If the primary carrier gets a release under those circumstances, and suit is then brought because you haven't stepped up to the plate, is it your position that because of that release that you have no obligation to step up to the plate and defend and indemnify? If the primary insurer obtains a release on behalf of the policyholders, as opposed to a release of its own liability, I just want to make sure I understand Your Honor's question. Well, you've put your finger on it, perhaps. If you had a limited release, one which just said, I've released the insurance company because you've thrown in your policy limit, but I've not released the claim. I'm just trying to figure out what triggers an excess policy. I understand. I think that situation that you've posited, Your Honor, would be a problem because the primary carrier in that situation would have a duty to, under the law of Massachusetts, would have an obligation to exchange a payment for a release of its policyholder. That's the obligation they have to the policyholder. I don't think they could say, we want a release of our liability as a carrier, but not ask for it on behalf of the policyholder. But what is the effect of the release on your obligation under your excess policy? I'm trying to figure out how an excess policy, which is in a different company. There are cases where the excess policy is in the same company. This is a different company. I'm just trying to figure out what triggers your obligation and what protects somebody in the position of these plaintiffs trying to take the underlying base policy and yet proceed with their claim. What should they have done differently? Well, Your Honor, respectfully, I'm not in the position of giving them advice. But I think in answer to your question, I think the answer lies in the case law, actually. Campione addresses it, and I think to some degree the Travelers v. Waltham Industries cases addresses it. In this sense, both cases involve a settlement and an agreement for judgment. And the point of that is, as we discussed earlier, as Judge Barron brought up, the judgment matters because it imposes a liability, a requirement to pay compensation as damages. So what I would say is that if that had been done, if there was a settlement in this case which said, plaintiffs shall, excuse me, defendants, the underlying defendants shall pay $6 million to the plaintiff, there's an agreement for judgment for $6 million, and an assignment that would have given them, that would have given the underlying defendants a right to sue and at least state a claim for breach of contract. That's putting aside the questions of coverage because we have exclusions that we relied upon in disclaiming coverage here, which are not being discussed today. Those are merits issues. The threshold question is, do they even state a claim where in this case you not only do not have a judgment, but you have a stipulation of dismissal? Can you go back one step to Judge Stahl's question? So I make a claim. How are we supposed to trigger the excess insurer's policy if the primary insurer wants to just call it quits? Upon receiving the claim. Are they supposed to then go to court and say, well, the only way I can pay out your claim is if you now go to court and enter judgment even though you haven't sued me? I think that there has to be, under the law of Massachusetts as it's been articulated, the answer is that that duty to pay damages on behalf of the insured is triggered by a judgment. I'm just practically speaking. It's the consequence of that answer that in the hypothetical he gave you in which the person trying to make a claim on the policy goes to the primary insurer and says, look, I want to collect on my policy. And the primary insurer says, gee, you have an awfully good claim. I'll pay you the million dollars. Is the only way to kick in the other $5 million at that point to go to court to say, look, first you better sue me so that we can then go into court and enter judgment? I think there has to be a suit or there can be a settlement in which there is an agreement for judgment that's entered. But either way. Otherwise, any time the primary insurer decides to pay, that means the excess insurer is off the hook? I'm not sure they're off the hook. He just said they were off the hook. I think what I'm saying is that there has to be some legal requirement, legal obligation to pay the damages that in a case where you have a primary and an excess. Counsel, in this situation you're describing, there would be an agreement to judgment. Wouldn't it, just as a matter of sort of sensible prudence, wouldn't it always be accompanied by an agreement not to enforce? Or an agreement not to execute. I think that's typically the way that it is done. That is the way you see it often done in settlements. Where does that scenario then play into the language in the excess policy about the insurer having to be legally obligated to pay the damages? It seems like it's a judgment in name only, but in terms of any likelihood of consequent enforcement of actual payment of damages, it's a melody. So how could that ever, how could that scenario ever trigger the excess policy? I suspect if there was, if the covenant not to execute were somehow deemed invalid, or there was some other basis for setting it aside, there still is this legal obligation on the part of the defendants to pay the money. When the judgment's entered as part of the settlement, in other words, if the settlement is for judgment plus covenant not to execute, and the covenant is deemed non-enforceable, does that blow up the settlement? And thereby the judgment? I think the judgment persists. I think the judgment persists. Isn't that the case law that tells us what happens? Because the judgment's not entered other than through the settlement. Correct, but it becomes an agreement for judgment that has... Agreement. The agreement was also contingent on the covenant not to execute, which if it then becomes non-enforceable, then is there even a judgment? I would think there still would be a judgment and still liability, notwithstanding that, the unenforceability of the covenant, and it would then still impose a legal obligation, potentially a legal obligation to pay on behalf of the excess carrier, assuming that there were coverage in place. Why would such a covenant be deemed non-enforceable? What could lead to that kind of determination? I guess it would really depend on the facts and the consideration and the negotiation, and maybe one could conceive of different scenarios where maybe information was withheld in the negotiation. I thought Champion talked about what the risk of collusion was, how strong the claim of the injury was, how likely it was that there was liability. Yes, yeah. It seems to me that the inevitable result of your position is that it's going to be very, very hard to settle cases because without some clear roadmap, how you trigger that excess coverage becomes very important. I started where I said there were exclusions that you wanted to use in your policy, and so if you are in a position of the plaintiff, the plaintiff has a big claim. The underlying carrier is willing to, the primary carrier is willing to pay his policy limit, but he wants some kind of a document that protects him, and by the way, the underlying defendant who is being indemnified wants to be protected as well. So it seems to me that unless there is some mechanism which gets your client into the mix, it becomes pretty hard to figure out how you safely would settle with the primary carrier. I think the point is, Your Honor, they certainly have the option to settle a claim and to step in, and frequently if there is coverage in force, that's precisely what happens. In other words, if there are no exclusions that apply and they accept coverage, and that is what happened in some of the cases that are cited in the paper. But counsel, you see the premise of the Pollock's argument that what they did here was fairly common in this situation where you have a primary and an excess carrier, and if the district court's decision stands, it will dramatically undermine common practices of settlement. I think you disagree with that. You seem to say that they did not have to write the kind of settlement agreement that they wrote here. They did not have to have these comprehensive releases that they had that assured, ensured that there was no further obligation. They wrote an agreement that did not work, but there were other ways to do it that could have triggered the excess policy. I think the answer to that is yes, that is my position, and if I could elaborate just for a second, I think there is something that is very, very important here that we have to keep in mind, and I know my time is up, but the question here is not only did a judgment not enter, not only was there not an agreement for judgment, but if the court examines the settlement agreement, and as the district court did, what you will see is that there is no commitment on the part of any of the underlying defendants in that document to pay any money whatsoever to the estate of Mr. Sovatti. It is very, very clear. There is a settlement payment defined in that document, and that payment is for $1 million of the Western World Policy. If you search that document, you will find no other payment of any money flowing from anyone to anyone. It is a singular $1 million primary limits payment. So even if we get past this question of is there a legal obligation to pay, and we look at this contract and say is there a circumstance in which just the settlement agreement without a judgment can give rise to that liability on the part of the excess carrier, you cannot escape the conclusion that this document doesn't do that. It does not impose even a contractual commitment by the underlying defendants, any of them, to pay Mrs. Sovatti any money. In fact, it specifically says she will under no circumstances pursue them for money, and it further says that in lieu of the payment, there is an assignment of whatever rights they may have, and they specifically say in two places in the agreement, we're not promising you that we're giving you anything with this assignment. We're not promising you that there's any coverage there to be obtained from the American policy. Why is this important? Because I think if we're addressing this question, counsel had pointed out that there was this, that this agreement accomplishes the task of creating a legal obligation to pay damages on the part of the underlying defendants. Their whole premise is that this settlement agreement accomplishes that. But then isn't that true of Campione, that there was no obligation to pay because of the covenant not to execute? There still was an agreement for judgment in that case. But you'll never execute on it. And there was also a statement of, as I recall, of the compensation. So the only thing that's significant in what you're saying is, again, back to the judgment versus no judgment. It might have been Campione's recognition that you can have a covenant not to execute. It's just a formal point about whether there's a judgment, correct? That's correct, but I think, again, what I'm emphasizing is simply that when you search that document, there's no contractual commitment to pay the money at all. And the only contractual commitment in Campione is a consequence of the judgment. I believe, and Your Honor, we don't have the benefit of what that agreement looked like exactly, although it is discussed in that opinion. I believe that agreement did recite an amount of money being paid, and then there was a covenant not to execute and an assignment and a release and an agreement for judgment. That's my recollection of the decision. But the point I would leave you with is the point that I just emphasized a moment ago, and I apologize for being over my time, is simply that there is, under the law of Massachusetts, there's an obligation to pay as damages did not arise in these circumstances. And furthermore, the argument they make with regard to the contract giving rise to that, factually, it simply doesn't at all. There was a motion to certify in this case. There was. And it was denied by early in the case. It was denied. That's correct. Without prejudice, that denial? I think that's right. Did the motion come with a proposed certified question? I would have to examine it, Your Honor. I thank the Court for your time.